T. Kennedy Helm, IV (SBN 282319)
HELM LAW OFFICE, PC
644 40th Street, Suite 305
Oakland, California 94609
T: (510) 350-7517
F: (510) 350-7359
email: kennedy@helmlawoffice.com

*Attorney for Plaintiffs*

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

### FRESNO DIVISION

| | |
|---|---|
| KELSI FAHRNI, deceased, through her Co-Successors in Interest TIFFANY FAHRNI and DOUG FAHRNI; TIFFANY FAHRNI, individually; and DOUG FAHRNI, individually;<br><br>Plaintiffs,<br><br>vs.<br><br>COUNTY OF TULARE, a public entity; PRECISION PSYCHIATRIC SERVICES, Inc., a California corporation; ANTHONY CEJA, AMFT; SURESHBABU KURRA, MD; and DOES 1–50, jointly and severally,<br><br>Defendants. | Case No.<br><br>**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**<br><br>1. 42 U.S.C. § 1983 – Civil Rights Violations<br>2. 42 U.S.C. § 1983 – *Monell* and Supervisory Liability<br>3. California Civil Code § 52.1 (b) – State Civil Rights Violations<br>4. Negligence |

Plaintiffs, by and through their attorney, HELM LAW OFFICE, PC, for their Complaint against Defendants, state as follows:

## JURISDICTION

1. This is a civil-rights, wrongful-death, and survival action arising from the in-custody death of KELSI FAHRNI, on or about August 12, 2022, while in the Tulare County Jail in the City of Visalia, County of Tulare, California.

2. Jurisdiction is founded upon 28 U.S.C. §§ 1331 and 1343(a)(3) and (4) because this action is being brought to obtain compensatory and punitive damages for the deprivation, under color of state law, of the rights of citizens of the United States that are secured by the United States Constitution, pursuant to 42 U.S.C. §§ 1983 and 1988. This action is brought pursuant to the First and Fourteenth Amendments to the United States Constitution, as well as the laws and Constitution of the State of California.

3. Plaintiffs further invoke the supplemental jurisdiction of this Court, pursuant to 28 U.S.C. § 1367(a), to hear and decide claims arising under state law.

## INTRADISTRICT ASSIGNMENT TO FRESNO DIVISION

4. A substantial part of the events and/or omissions complained of herein occurred in the City of Visalia, County of Tulare, California, and, pursuant to Eastern District Civil Local Rule 120(d), this action is properly assigned to the Fresno Division of the United States District Court for the Eastern District of California.

## PARTIES AND PROCEDURE

5. Plaintiff TIFFANY FAHRNI is and was at all times herein mentioned the mother of Decedent KELSI FAHRNI, and a resident of the State of California. Plaintiff TIFFANY FAHRNI brings these claims individually for wrongful death and violation of her personal rights, and as a co-successor in interest for her daughter, Decedent KELSI FAHRNI, pursuant to California Code of Civil Procedure § 377.11 and federal civil-rights laws, asserting survival claims for KELSI FAHRNI, under both state and federal law.

6. Plaintiff DOUG FAHRNI is and was at all times herein mentioned the father of Decedent KELSI FAHRNI, and a resident of the State of California. Plaintiff DOUG FAHRNI brings these claims individually for wrongful death and violation of his personal rights, and as a co-successor in interest for his daughter, Decedent KELSI FAHRNI, pursuant to California Code of Civil Procedure § 377.11 and federal civil-rights laws, asserting survival claims for KELSI FAHRNI, under both state and federal law.

7. The claims in this Complaint are brought pursuant to California Code of Civil Procedure §§ 377.20 *et seq.* and 377.60 *et seq.*, which provide for survival and wrongful-death actions. As set forth more specifically above, the claims are brought both individually and on behalf of KELSI FAHRNI, on the basis of 42 U.S.C. §§ 1983 and 1988, the United States Constitution, federal and state civil-rights law, and California law. These claims are also brought by Plaintiffs as Private Attorneys General, to vindicate not only their rights, but others' civil rights of great importance.

8. Defendant COUNTY OF TULARE ("COUNTY") is a public entity, established by the laws and Constitution of the State of California, which owns, operates, manages, directs, and controls the Tulare County Sheriff's Department ("TCSO"), and is the employer of the individual COUNTY Defendants, as well as certain DOE Defendants. Under its authority, the COUNTY operates the TCSO.

9. Defendant COUNTY, under its authority, operates the Tulare County Jail and is, and was, responsible for ensuring the provision of emergency, medical, and mental-health services to all Tulare County Jail detainees. Defendant COUNTY was and is responsible for ensuring that the basic human needs of individuals in its custody are met, and for ensuring that inmates are not at risk of serious harm, including by providing appropriate funding, oversight, and corrective action to ensure adequate conditions. Defendant COUNTY is also responsible for ensuring that jail policies and practices do not violate inmates' constitutional rights or put them at risk of serious harm, including by suicide, because they are a danger to themselves or otherwise unable to properly care for themselves. Defendant COUNTY, by law, possesses the ultimate authority

over the responsibility for the medical care, mental-health care, treatment, and physical safekeeping of all incarcerated persons at the Tulare County Jail, including Decedent KELSI FAHRNI. Pursuant to California Government Code § 815.2, the COUNTY is vicariously liable for the state-law torts of its employees and agents, including the individual defendants herein that are both named and those to-be-identified individuals that will be named later.

10. Defendant PRECISION PSYCHIATRIC SERVICES, INC. ("PRECISION") is a California for-profit corporation. The COUNTY contracts with PRECISION to deliver psychiatry and mental-health care for the pretrial detainees in its Jail. PRECISION has offices in Visalia, Bakersfield, and Sacramento.

11. Defendant PRECISION and their employee and medical directors for PRECISION's services at the COUNTY's Jail, were at all material times responsible for making and enforcing policies, procedures, supervision, and training related to the mental-health care of inmates at Defendant COUNTY's Tulare County Jail, including, but not limited to: properly assessing, evaluating, and treating mental-health needs of inmates, including providing appropriate observation and suicide prevention, and psychiatric care.

12. Defendant ANTHONY CEJA, AMFT ("CEJA") was at all material times employed by Defendant PRECISION, and acted at all material times within the course and scope of that employment. Defendant CEJA, an Associate Marriage and Family Therapist, failed to provide competent mental-health care to KELSI FAHRNI, with deliberate indifference to her serious risk of self-harm.

13. Defendant SURESHBABU KURRA, MD ("KURRA"), was at all material times employed by Defendant PRECISION, and acted at all material times within the course and scope of that employment. Defendant KURRA, a physician, failed to provide competent mental-health care to KELSI FAHRNI, with deliberate indifference to her serious risk of self-harm.

14. Despite Plaintiffs' counsel's multiple requests for records, Defendant COUNTY has not provided Plaintiffs' counsel with requested documents and information concerning this incident, including complete medical, mental-health, and custody records. As a result of the COUNTY's

opacity, the true names and capacities of Defendants sued herein as DOES 1–50 ("DOE Defendants") are unknown to Plaintiffs, who therefore sue said Defendants by such fictitious names. Plaintiffs will seek leave to amend this Complaint to show their true names and capacities, when the same are ascertained.

15. DOE Defendants 1–20 were and/or are to-be-identified employees/agents of the COUNTY and/or the TCSO, and at all material times acted within the course and scope of that employment.

16. DOE Defendants 21–40 were and/or are and/or may be to-be-identified employees and/or agents of Defendant PRECISION, and at all material times acted within the course and scope of that employment.

17. DOE Defendants 41–50 were and/or are and/or may be to-be-identified employees and/or agents of any other to-be-identified municipality or business entity, and at all material times acted within the course and scope of that employment.

18. Plaintiffs are informed and believe, and thereon allege, that each of the Defendants sued herein was negligently, wrongfully, and otherwise responsible in some manner for the events and happenings as hereinafter described, and proximately caused injuries and damages to Decedent and Plaintiffs.

19. Further, one or more DOE Defendants was at all material times responsible for the hiring, training, supervision, and discipline of other defendants, including DOE Defendants.

20. Plaintiffs are informed and believe, and thereon allege, that each of the Defendants was at all material times an agent, servant, employee, partner, joint venturer, co-conspirator, and/or alter ego of the remaining Defendants, and in doing the things herein alleged, was acting within the course and scope of that relationship.

21. Plaintiffs are further informed and believe, and thereon allege, that each of the Defendants herein gave consent, aid, and assistance to each of the remaining Defendants, and ratified and/or authorized the acts or omissions of each Defendant as alleged herein, except as may be hereinafter otherwise, specifically alleged.

22. At all material times, each Defendant was jointly engaged in tortious activity, and was an integral participant in the events and violations of rights described herein, resulting in the deprivation of Decedent's and Plaintiffs' constitutional rights and other harm.

23. The acts and omissions of all Defendants as set forth herein were at all material times pursuant to the actual customs, policies, practices, and procedures of the COUNTY and PRECISION.

24. At all material times, each Defendant acted under color of the laws, statutes, ordinances, and regulations of the State of California.

25. Plaintiffs timely and properly filed a government code claim, pursuant to California Government Code § 910 *et seq.*, and this action is timely filed within all applicable statutes of limitation.

26. This Complaint may be pleaded in the alternative, pursuant to Rule 8(d)(2) of the Federal Rules of Civil Procedure.

## **GENERAL ALLEGATIONS**

27. Plaintiffs reallege each and every paragraph in this Complaint, as though fully set forth here.

28. When she died alone in her cell at the Tulare County Jail on August 12, 2022, KELSI FAHRNI was days shy of her thirtieth birthday.

29. KELSI FAHRNI had a history of self-harm while in the custody of Defendant COUNTY's TCSO and its jails, including but not limited to: swallowing razor blades during two incarcerations in 2021; jumping off the tier, which resulted in a broken ankle; and self-asphyxiation. On or about April 20, 2021, her COUNTY Jail medical records show that KELSI FAHRNI had "symptoms of BPD [border line personality disorder]" and that although she was then "at moderate risk for suicide," she had "attempted suicide by hanging during a recent incarceration" and "would benefit from a psychiatric evaluation and close monitoring by correctional and mental health staff." KELSI FAHRNI's history of self-harm was known to Defendants CEJA, KURRA, and DOES 1–50.

COMPLAINT
*Fahrni, et al. v. County of Tulare, et al.*
Case No.:                          5

30. On August 6, 2022, KELSI FAHRNI was booked into the Tulare County Jail as a pretrial detainee. A receiving screening indicated that for over a year she had inhaled Fentanyl daily, and had last used the day before, and the screening further noted that KELSI FAHRNI had attempted suicide over the last 1–5 years, including by "cut/stabbing."

31. Sometime thereafter, a COUNTY DOE Defendant housed KELSI FAHRNI in administrative segregation, in a cell alone.

32. While housed alone in administrative segregation, with untreated mental illness and opiate withdrawal, KELSI FAHRNI deteriorated and began self-harming behaviors, including, on information and belief, self-asphyxiating.

33. On August 11, 2022, at about 2:36 p.m., Defendant KURRA saw KELSI FAHRNI for about ten minutes. Despite KELSI FAHRNI's exhibiting self-harming behavior, Defendant KURRA failed to perform a competent psychiatric evaluation, and he failed to put her on suicide watch. On information and belief, neither at this time nor any other time was KELSI FAHRNI properly and adequately evaluated by a psychiatrist to assess the acuity of her suicidality, with deliberate indifference to her substantial risk of self-harm.

34. Based on the totality of circumstances and the totality of risk factors present, KELSI FAHRNI was at an elevated risk of suicide, and reasonable precautions needed to be taken, in view of the significant risk that KELSI FAHRNI posed of committing suicide.

35. Defendant KURRA with deliberate indifference to KELSI FAHRNI's serious medical needs, failed to take reasonable steps to protect the safety and wellbeing of KELSI FAHRNI by formulating an appropriate, individualized treatment plan for her.

36. On August 12, 2022, at about 11:40 a.m., Defendant CEJA saw KELSI FAHRNI, who expressed a desire to see a psychiatrist. With deliberate indifference, Defendant CEJA failed properly assess her; or to refer her to see a psychiatrist.

37. California Code of Regulations Title 15 defines "safety checks" as direct, visual observation performed at random intervals within timeframes prescribed in these regulations to provide for the health and welfare of inmates.

38. Pursuant to the California Code of Regulations, safety checks "shall be conducted at least hourly through direct visual observation of all inmates. There shall be no more than a 60-minute lapse between safety checks. There shall be a written plan that includes the documentation of routine safety checks."

39. On information and belief, the COUNTY has a custom of failing to provide safety checks every 60 minutes, including allowing correctional deputies to fail to document routine safety checks.

40. On August 12, 2022, around 12:30 p.m., on information and belief, KELSI FAHRNI began asphyxiating herself with a bed sheet in her cell.

41. On information and belief, from about 12:30 p.m. until she was found unresponsive—at least two hours later—one or more of DOE Defendants 1–50 failed to perform any hourly checks on Decedent FAHRNI as she engaged in further acts of self-harm, including continuing to asphyxiate herself with a bed sheet.

42. Finally, two hours after she began asphyxiating herself, at about 2:34 p.m., Defendant CEJA was performing his daily mental-health rounds in the Jail, and he found KELSI FAHRNI hanging by a bedsheet in cell 111, where she continued to be housed alone.

43. Defendants called the City of Dinuba Fire Department, which arrived at about 2:55 p.m., and declared her dead at the scene. On information and belief, KELSI FAHRNI had been dead for over two hours.

44. At all material times, and alternatively, the actions and omissions of each Defendant were intentional, wanton, and/or willful, conscience-shocking, reckless, malicious, deliberately indifferent to Decedent's and Plaintiffs' rights, and done with actual malice, recklessness, gross negligence, deliberate indifference, negligence, and/or were otherwise objectively unreasonable.

45. As a direct and proximate result of each Defendant's acts and/or omissions, as set forth above, Plaintiffs sustained the following injuries and damages, past and future, including, but not limited to:

a. Wrongful death of KELSI FAHRNI, pursuant to California Code of Civil Procedure § 377.60 *et seq.*;

b. Hospital and medical expenses, pursuant to California Code of Civil Procedure § 377.20 *et seq.*;

c. Coroner's fees, funeral, and burial expenses, pursuant to California Code of Civil Procedure § 377.20 *et seq.*;

d. Loss of support and familial relationships, including loss of love, companionship, comfort, affection, society, services, solace, and moral support (wrongful death);

e. KELSI FAHRNI's loss of life, including loss of enjoyment of her life, pursuant to federal civil rights law;

f. KELSI FAHRNI's pre-death, conscious pain and suffering, pursuant to California law and federal civil rights law;

g. All Plaintiffs' loss of their relationship with the Decedent, including pain and suffering and the attendant emotional distress, pursuant to federal civil rights law (based on individual § 1983 claims for loss of familial association);

h. All damages, penalties, costs, and attorneys' fees recoverable under 42 U.S.C. §§ 1983, 1988; California Civil Code §§ 52 and 52.1 *et seq.*; California Code of Civil Procedure § 1021.5; and as otherwise allowed under California and United States statutes, codes, and common law.

46. The conduct of Defendants DOES 1–50 was malicious, wanton, oppressive, and in reckless disregard of the rights and safety of Decedent, Plaintiffs, and the public. Plaintiffs are, therefore, entitled to an award of punitive damages against Defendants DOES 1–50.

## CAUSES OF ACTION

**FIRST CAUSE OF ACTION**
**(42 U.S.C. § 1983)**
**PLAINTIFFS AGAINST DEFENDANTS CEJA, KURRA, AND DOES 1–50**

47. Plaintiffs re-allege and incorporate by reference each and every allegation contained in this complaint, as though fully set forth here.

48. By the actions and omissions described above, Defendants DOES 1–50, acting under the color of state law in their individual capacities, deprived KELSI FAHRNI as a pretrial detainee

of the rights, privileges, and immunities secured by the Fourteenth Amendment by subjecting her, or through their deliberate indifference, allowing others to subject her, to unsafe conditions of confinement by failing to put her on suicide watch, provide mental-health care, or to perform safety checks on KELSI FAHRNI.

49. By the actions and omissions described above, Defendants CEJA, KURRA, and DOES 1–50, acting under the color of state law in their individual capacities, deprived KELSI FAHRNI as a pretrial detainee of the rights, privileges, and immunities secured by the Fourteenth Amendment by subjecting her, or through their deliberate indifference, allowing others to subject her, to delay and denial of access to medical or mental-health care for a serious, but treatable, medical or mental-health condition.

50. The listed Defendants knew that KELSI FAHRNI's medical condition was serious, but treatable, and knew or must have known that she required access and delivery to urgently needed medical/mental health care. Defendants further had a duty to provide KELSI FAHRNI reasonable security and safe, appropriate housing and monitoring to accommodate her mental health condition.

51. The listed Defendants ignored, delayed, or denied to KELSI FAHRNI urgently needed medical and psychiatric care and treatment. As a result of the Defendants' deliberate indifference to both KELSI FAHRNI's need for medical care and treatment and her mental condition, Plaintiffs suffered damages and deprivation of constitutional rights, as described herein.

52. By the actions and omissions described above, the individually named Defendants violated 42 U.S.C. § 1983, depriving Plaintiffs and Decedent of the following well-settled constitutional rights that are protected by the First and Fourteenth Amendments to the U.S. Constitution:

    a. The right to be free from deliberate indifference to KELSI FAHRNI's serious medical and mental-health needs while in custody and confined in jail as a pretrial detainee, as secured by the Fourteenth Amendment;

COMPLAINT
*Fahrni, et al. v. County of Tulare, et al.*
Case No.:     9

a. The right to be free from unsafe conditions of confinement, including by hourly direct-view safety checks as required under Title 15 of the California Code of Regulations.

b. The right to be free from wrongful government interference with familial relationships and Plaintiffs' and Decedent's right to companionship, society, and support, as secured by the First and Fourteenth Amendments.

53. The listed Defendants' failure to intervene, prevent, or stop the constitutional violations by others, when Defendants were in a position to so intervene when such violations were occurring, also renders such Defendant(s) liable for these violations.

54. Defendants subjected Plaintiffs and Decedent to their wrongful conduct, depriving Plaintiffs and Decedent of the rights described herein, knowingly, maliciously, and with conscious and reckless disregard for whether the rights and safety of Plaintiffs (individually and on behalf of KELSI FAHRNI) and others would be violated by their acts and/or omissions.

55. As a proximate result of the foregoing wrongful acts and/or omissions, Plaintiffs and Decedent sustained injuries and damages, as set forth above, in ¶ 45. Plaintiffs and Decedent are, therefore, entitled to general and compensatory damages in an amount to be proven at trial.

56. In committing the acts alleged above, the individually named Defendants and the DOE Defendants acted maliciously and/or were guilty of a wanton and reckless disregard for the rights, safety, and emotional well-being of Plaintiffs and Decedent, and by reason thereof, Plaintiffs are entitled to punitive damages and penalties allowable under 42 U.S.C. § 1983, California Code of Civil Procedure §§ 377.20 et seq, and other state and federal law against these individual Defendants; no punitive damages are sought directly against the COUNTY.

57. Plaintiffs are also entitled to reasonable costs and attorney's fees under 42 U.S.C. § 1988 and other applicable California codes and laws.

### SECOND CAUSE OF ACTION
### (42 U.S.C. § 1983 – *Monell* and Supervisory Liability)
### PLAINTIFFS AGAINST DEFENDANTS COUNTY OF TULARE, PRECISION, and DOES 1–50

58. Plaintiffs re-allege and incorporate by reference each and every allegation contained in this complaint, as though fully set forth herein.

59. As supervisors, Defendants DOES 1–50 each permitted and failed to prevent the unconstitutional acts of other Defendants and individuals under their supervision and control, and failed to properly supervise such individuals, with deliberate indifference to the rights and serious medical needs of KELSI FAHRNI. Each of these supervising Defendants either directed her or his subordinates in conduct that violated Decedent's rights, OR set in motion a series of acts and omissions by his or her subordinates that the supervisor knew or reasonably should have known would deprive Decedent of rights, OR knew his or her subordinates were engaging in acts likely to deprive Decedent of rights and failed to act to prevent his or her subordinate from engaging in such conduct, OR disregarded the consequence of a known or obvious training deficiency that she or he must have known would cause subordinates to violate Decedent's rights, and in fact did cause the violation of Decedent's rights. (See, Ninth Circuit Model Civil Jury Instruction 9.4). Furthermore, each of these supervising Defendants is liable in their failures to intervene in their subordinates' apparent violations of Decedents' rights.

60. On information and belief, no adequate Suicide Risk Assessment tool ("SRA") was implemented in COUNTY's jail prior to the Decedent's suicide, which was needed by COUNTY and PRECISION to both initiate suicide precautions in COUNTY's jail and discharge inmates from suicide precautions, but it either was never promulgated, never implemented, has not been enforced, is inadequate, or was not followed with respect to Decedent.

61. Prior to Decedent's incarceration, on information and belief, the COUNTY, PRECISION, and their policymakers and administrators were aware of the need for COUNTY and PRECISION staff to be trained on the Suicide Risk Assessment form and development of treatment plans, with the training to be developed for new and existing COUNTY and PRECISION employees, along with regular refresher training. Additionally, the COUNTY, PRECISION, and their respective policymakers and administrators were aware that this training needed to include avoiding negative attitudes, the impact of correctional environments on

suicidal behavior, predisposing factors, high-risk time periods, warning signs, and a suicide prevention policy, inter alia.

62. On information and belief, despite this knowledge that the COUNTY and PRECISION, including the named Defendants as well as their policymakers and administrators, had at least as of prior to the Decedent's incarceration, and in fact had much earlier, they failed to implement and/or enforce and/or properly execute these drastically needed suicide prevention policies, which failure was a moving force and proximate cause of the deprivations of Plaintiffs' and Decedent's clearly established and well-settled constitutional rights, in violation of 42 U.S.C. § 1983, as more fully set forth above in the First Cause of Action.

63. Other, similar such incidents, whether such incidents precipitated the filing of a Government Code Section 910 tort claim, any other type of complaint, or lawsuit, put the COUNTY and PRECISION on adequate notice, thereby giving the COUNTY, PRECISION, and their policymakers actual knowledge or reason to know that their policies and procedures were inadequate to prevent the violations complained of in this Complaint; additionally and alternatively, given the foregoing notice and other facts and circumstances, the COUNTY, PRECISION, and their policymakers had actual knowledge, were deliberately indifferent to, or had reason to know of the known or obvious consequences of their failures, including what occurred in the instant case, which culminated in the Decedent's wrongful death.

64. Prior to Decedent's incarceration, on information and belief, the COUNTY was aware of the need to ensure that California Code of Regulations Title 15 hourly safety checks occur.

65. On information and belief, despite this knowledge that the COUNTY, including DOE DEFENDANTS, as well as their policymakers and administrators, had at least as of prior to the Decedent's incarceration, and in fact had much earlier, they failed to implement and/or enforce and/or properly execute these safety checks, which failure was a moving force and proximate cause of the deprivations of Plaintiffs' and Decedent's clearly established and well-settled constitutional rights, in violation of 42 U.S.C. § 1983, as more fully set forth above in the First Cause of Action.

66. Plaintiffs allege, upon information and belief, the unconstitutional actions and/or omissions of one or more of COUNTY and/or PRECISION Defendants DOES 1–50 were pursuant to the following customs, policies, practices and/or procedures of the COUNTY and PRECISION, stated in the alternative, which were directed, encouraged, allowed, and/or ratified by policy making officials for the COUNTY and PRECISION:

   a. To fail to implement and/or enforce and/or properly execute safety checks pursuant to California Code of Regulations Title 15;

   b. To deny inmates at the COUNTY's jail access to appropriate, competent, and necessary care for serious medical and psychiatric needs, including, but not limited to, by failing to require that all medical/psychiatric staff and supervisors at the jail be properly trained, supervised, credentialed, and licensed as required by law;

   c. To fail to implement and/or enforce and/or properly execute drastically needed suicide prevention policies, which COUNTY and PRECISION officials knew and/or had reason to know were needed;

   d. To fail to ensure that suicide precautions are implemented with a proper assessment, including a safety plan for the individual;

   e. To fail to ensure an individualized safety plan is formulated, documented, and followed;

   f. To fail to properly classify, house, and/or monitor inmates suffering from mental health disabilities, including placement on suicide watch with proper suicide precautions, including failing to consider in any way the clear and obvious danger of placing inmates at risk of suicide in cells with means to hang and injure themselves (including bunk beds, horizontal bars, clothing, and ligature materials) and without the frequent, logged observation required by law;

   g. To allow, encourage, and require unlicensed, inadequately trained, and inadequately supervised medical staff to make decisions to place jail inmates on, and remove inmates from, suicide watch in direct violation of applicable law and standards, including permitting unlicensed and/or untrained medical staff to remove severely mentally ill inmates from suicide watch without a reasonable, appropriate, and lawful basis for doing so;

   h. To fail to institute proper procedures and training to coordinate inmate assessment, placement, suicide watch decisions, transfers psychiatric facilities, and care with the COUNTY and PRECISION medical staff, jail physicians, jail psychiatrists, court, and/or jail corrections staff, where there was an obvious need for such to prevent the type of tragedy that occurred in this case;

i. To fail to institute, require, and enforce proper and adequate training, supervision, policies, and procedures for handling, housing, and caring for mentally ill and/or emotionally disturbed inmates at the COUNTY Jail, including alternatives to placing such ill and disturbed inmates in need of treatment in solitary confinement or segregation cells that are intended and used to punish inmates, with the obvious consequence that the mental health needs of such inmates remain unaddressed and are in fact aggravated and increased by such punitive treatment;

j. To fail to have and enforce necessary, appropriate, and lawful policies, procedures, and training programs to prevent or correct the unconstitutional conduct, customs, and procedures described in this Complaint and in subparagraphs (a) through (i) above, when the need for such was obvious, with deliberate indifference to the rights and safety of Plaintiffs, Decedent, and the public, and in the face of an obvious need for such policies, procedures, and training programs.

67. In the alternative, upon information and belief, Defendant COUNTY and/or PRECISION may have instituted policies or training addressing some or all the topics listed above, but with deliberate indifference to citizens' rights, failed to properly oversee, enforce, and/or properly carry out such policies and/or training.

68. The above-described customs, policies, practices, and/or procedures of the COUNTY and PRECISION were a moving force and/or a proximate cause of the deprivations of Plaintiffs' and Decedent's constitutional rights, in violation of 42 U.S.C. § 1983, as more fully set forth above the First Cause of Action.

69. Defendant COUNTY and PRECISION are also liable for the violations of Plaintiffs' and Decedent's rights by their final policy makers, as described above. (*See*, Ninth Circuit Model Civil Jury Instruction 9.6).

70. On information and belief, the COUNTY and PRECISION both conducted an investigation and review of this matter leading to the death of KELSI FAHRNI. The unconstitutional actions and/or omissions of the individually named Defendants, DOES 1–50, and other COUNTY and PRECISION personnel, as described above, were approved, tolerated, and/or ratified by policy making officers for the COUNTY and PRECISION. Plaintiffs are informed and believe, and thereupon allege, the details of this incident have been revealed to the

authorized policy makers within the COUNTY, including the COUNTY agencies listed above, and that such policymakers have direct knowledge of the fact that KELSI FAHRNI was unlawfully denied necessary care for her serious medical needs due to their and their subordinates' misconduct and violations of Decedent's rights. Notwithstanding this knowledge, the authorized policymakers within the COUNTY and PRECISION have approved of the individually named Defendants' and DOES 1–50s' conduct and decisions in this matter to the extent such individuals were under their supervision and oversight, and have made a deliberate, conscious, and affirmative choice to endorse and ratify such conduct and decisions, and the basis for them, which resulted in the death of KELSI FAHRNI. By so doing, the authorized policymakers within the COUNTY and PRECISION have shown affirmative agreement with the conduct of individual Defendants and other employees/agents under their supervision, and have ratified the unconstitutional acts of these individual Defendants, employees, and agents.

71. The aforementioned customs, policies, practices, and procedures; the failure to properly and adequately hire, train, instruct, monitor, supervise, evaluate, investigate, and discipline; and, the unconstitutional orders, approvals, ratification, and toleration of wrongful conduct of individual Defendants were a moving force and/or a proximate cause of the deprivations of Plaintiffs' and Decedent's clearly established and well-settled constitutional rights, in violation of 42 U.S.C. § 1983, as more fully set forth above in the First Cause of Action.

72. As a direct and proximate result of the foregoing unconstitutional actions, omissions, customs, polices, practices, and/or procedures of Defendants DOES 1–10, or the lack or inadequacy thereof, Plaintiffs sustained serious and permanent injuries and damages, and are entitled to damages, penalties, costs, and attorneys' fees, as set forth above, in ¶ 45, and punitive damages against Defendants CEJA, KURRA, and DOES 1–50, in their individual capacities.

**THIRD CAUSE OF ACTION**
**(VIOLATION OF CALIFORNIA CIVIL CODE § 52.1 (b) – BANE ACT)**
**PLAINTIFFS AGAINST DEFENDANTS CEJA, KURRA, AND DOES 1–50**

73. Plaintiffs re-allege and incorporate by reference each and every paragraph contained in this complaint, as if fully set forth here.

74. By their acts, omissions, customs, and policies, each Defendant, acting in concert/conspiracy, as described above, interfered with, and/or attempted to interfere with, by acting with a reckless disregard for Decedent's rights under California Civil Code § 52.1, by violating the following clearly established rights under the United States Constitution and the California Constitution:

   a. Decedent's right to be free from deliberate indifference to her serious medical needs while in custody as a pretrial detainee, as secured by the Fourteenth Amendment to the United States Constitution and the California Constitution, Article 1, Section 7;

   b. Decedent's right to be free from unsafe conditions of confinement, including by hourly direct-view safety checks as required under Title 15 of the California Code of Regulations.

   c. Decedent's right to be free from wrongful government interference with familial relationships and the right to companionship, society, and support of each other, as secured by the First and Fourteenth Amendments;

   d. Decedent's right to enjoy and defend life and liberty; acquire, possess, and protect property; and pursue and obtain safety, happiness, and privacy, as secured by the California Constitution, Article 1, Section 1; and

   e. The right to protection from bodily restraint, harm, or personal insult, as secured by California Civil Code § 43.

75. Alternatively, or concurrently, the threat, intimidation, and coercion described herein was neither necessary nor inherent to Defendants' violation of Decedent's rights, nor to any legitimate law enforcement activity.

76. Further, all of Defendants' violations of duties and rights and coercive conduct, described herein, were volitional acts; none were accidental or merely negligent.

77. This claim is based on a violation of Decedent's rights, and it is asserted as a survival claim.

78. The COUNTY is liable under California Government Code § 815.2 for injury proximately caused by an act or omission of an employee, committed within the course and scope of the employees' employment.

79. As a direct and proximate result of Defendants' violation of California Civil Code § 52.1 and of Decedent's rights under the United States and California Constitutions and law, Plaintiffs sustained injuries and damages, and against each and every Defendant is entitled to relief as set forth above, in ¶ 45, and to punitive damages against the individual Defendants and DOES 1–50 in their individual capacities, including all damages allowed by California Civil Code §§ 52, 52.1, and California law, including costs, attorneys' fees, three times actual damages, and civil penalties.

**FOURTH CAUSE OF ACTION**
**(NEGLIGENCE)**
**PLAINTIFFS AGAINST DEFENDANTS DOES 1–50**

80. Plaintiffs re-allege and incorporate by reference the allegations contained in this complaint, as though fully set forth herein.

81. At all material times, Defendants DOES 1–50 owed KELSI FAHRNI the duty to act with due care in the execution and enforcement of any right, law, or legal obligation.

82. At all material times, each Defendant owed KELSI FAHRNI the duty to act with reasonable care.

83. These general duties of reasonable care and due care owed to KELSI FAHRNI by all Defendants include, but were not limited, to the following specific obligations:

    a. To provide safe conditions of confinement, including by hourly direct-view safety checks as required under Title 15 of the California Code of Regulations.

    b. To provide safe and appropriate jail custody for KELSI FAHRNI, including reasonable classification, monitoring, and housing;

    c. To refrain from abusing their authority granted to them by law; and,

    d. To provide, or have provided, prompt and timely access to appropriate treatment and safety from the grave danger he posed to himself;

    e. To provide safe and appropriate jail custody for KELSI FAHRNI, including reasonable classification, monitoring, and housing, including placing her on suicide watch with proper suicide precautions, and preventing access to physical conditions and items that could foreseeably be used for suicide;

    f. To summon necessary and appropriate medical care for KELSI FAHRNI;

g. To use generally accepted law enforcement and jail procedures that are reasonable and appropriate for KELSI FAHRNI's status as a mentally ill and/or emotionally disturbed person;

h. To properly classify, house, and/or monitor inmates suffering from mental health disabilities, including placement on suicide watch with proper suicide precautions, and to not remove an inmate from a 5150 hold without a proper suicide risk assessment, as well as considering the clear and obvious danger of placing inmates at risk of suicide in cells with means to hang and injure themselves (including bunk beds, horizontal bars, clothing, and ligature materials) and without the frequent, logged observation required by law;

i. To refrain from violating KELSI FAHRNI's rights guaranteed by the United States and California Constitutions, as set forth above, and as otherwise protected by law.

84. By the acts and omissions set forth more fully in the paragraphs above, Defendants acted negligently and breached their duty of due care, which foreseeably resulted in the suffering of damages by KELSI FAHRNI, and Plaintiffs.

85. Defendants, through their acts and omissions, breached the aforementioned duties owed to KELSI FAHRNI and Plaintiffs.

86. Defendant COUNTY is vicariously liable pursuant to California Government Code section 815.2.

87. As a proximate result of Defendants' negligence, Decedent and Plaintiffs sustained injuries and damages, and against each listed Defendant in this Cause of Action is entitled to the relief described above, in ¶ 45. Plaintiffs also seek punitive damages against such individual Defendants in their individual capacities. Plaintiffs do not seek punitive damages against the COUNTY.

## **PRAYER FOR RELIEF**

WHEREFORE Plaintiffs respectfully request the following relief against each and every Defendant herein, jointly and severally:

    a. Compensatory damages in an amount according to proof and which is fair, just, and reasonable;

|   |   |   |
|---|---|---|
| | b. | Punitive damages against the individual Defendants, under 42 U.S.C. § 1983 and California law, in an amount according to proof and which is fair, just, and reasonable (punitive damages are not sought against Defendant COUNTY); |
| | c. | Attorneys' fees and costs of suit under 42 U.S.C. § 1988; |
| | d. | Attorneys' fees and costs of suit under California Civil Code §§ 52 (b)(3) and 52.1(h); |
| | e. | All other damages, penalties, costs, interest, and attorneys' fees as allowed by 42 U.S.C. §§ 1983 and 1988, California Code of Civil Procedure § 1021.5, California Civil Code §§ 52 et seq. and 52.1, and as otherwise may be allowed by California and/or federal law; |
| | f. | For such other and further relief, according to proof, as this Court may deem appropriate, just, or proper. |

Dated: August 23, 2023            **HELM LAW OFFICE, PC**

                                  */s/ T. Kennedy Helm, IV*
                                  T. KENNEDY HELM, IV
                                  Attorney for Plaintiffs

## **JURY TRIAL DEMAND**

Plaintiffs hereby respectfully demand a jury trial, pursuant to Federal Rule of Civil Procedure 38, for all claims for which a jury is permitted.

Dated: August 23, 2023            **HELM LAW OFFICE, PC**

                                  */s/ T. Kennedy Helm, IV*
                                  T. KENNEDY HELM, IV
                                  Attorney for Plaintiffs